[Sac. No. 891.   Department One.—January 17, 1902.]

WAYNE McCLOUD, Respondent, v. SAMUEL HEWLETT, Executor, etc., et al., Appellants. BANK OF HOLLISTER et al., Respondents.

ACTION UPON EXECUTOR'S BOND—PARTIAL DISTRIBUTION—MONEY DEPOSITED IN BANK UNDER AGREEMENT—JUDGMENT—MOTION FOR NEW TRIAL—PARTIES—APPEAL.—In an action upon the bond of a surviving executor, where the judgment enforced an agreement whereby moneys distributed to the plaintiff under a decree of partial distribution were deposited in the defendant bank by joint executors in their individual names, which deposit was to stop interest upon plaintiff's debt to the bank, and was to be checked over by them when plaintiff reached his majority, and the judgment for the plaintiff directed that the amount of the deposit be paid over to the defendant bank for the use of the plaintiff, and when so paid be credited on the plaintiff's judgment, the judgment in favor of the bank cannot be disturbed upon appeal from an order denying a new trial, where the bank was not served with notice of the motion.

ID.—APPEAL FROM JUDGMENT BY SURETIES.—Upon appeal from the judgment by sureties who especially excepted from their appeal the judgment in favor of the bank, and by other sureties appealing therefrom who were benefited, and not aggrieved, by such judgment, the judgment in favor of the bank will not be reversed.

ID.—TRUST NOT CREATED BY WILL—ABSOLUTE DEVISE—DIRECTION TO EXECUTORS TO INVEST PROCEEDS.—Where the property was devised absolutely to devisees named, a mere direction in the will to the executors to invest the proceeds of the sales of the real estate until the youngest child attains majority, without mentioning any other trust than that created by the office of executor, does not create any other trust.

ID.—INEFFECTUAL TRUST ATTEMPTED BY DECREE—UNCERTAINTY—WANT OF JURISDICTION.—Where the decree of partial distribution assumed to distribute the property to the executors as trustees under the will, without referring to the will as showing what powers were conferred on the trustees, and did not specially confer any powers, nor state the purpose of the trust, such attempted trust is ineffectual and void

for uncertainty; nor had the court any power to create a trust independently of the will, where none was provided for therein.

ID.—LIABILITY OF EXECUTOR ON BOND—FAILURE TO PAY OVER MONEYS PARTIALLY DISTRIBUTED.—The executors remained liable as such under the decree of partial distribution until the money was paid over to the distributees as directed, and where the surviving executor was not discharged from his trust as ' such when the plaintiff attained his majority, but continued to act as executor, he is liable on his bond for failure to pay over the deposit made in the bank, which remained under the control of the executors until actually paid over as agreed.

APPEAL from a judgment of the Superior Court of San Joaquin County and from an order denying a new trial. Joseph H. Budd, Judge.

The facts are stated in the opinion.

Louttit & Middlecoff, T. J. Elliott, J. B. Webster, and A. C. White, for Appellants.

L. W. Jefferson, and John A. Percy, for Wayne McCloud, Respondent.

Briggs & Hudner, for Bank of Hollister, Respondent.

H. W. Scott, for F. and M. Bank, Respondent.

CHIPMAN, C.—Action against defendant Samuel Hewlett, as executor of the last will of Alonzo McCloud, deceased, and certain other defendants on the official bond of said executor.

It appears from the findings that said Alonzo died in 1893, and in his last will named defendant Samuel Hewlett and one R. D. Baldwin as executors, who were duly appointed and qualified as such executors August 5, 1893; executor Baldwin died October 7, 1897; upon qualifying as executor, said Hewlett executed the bond on which the suit is brought. Notice to creditors was duly given, and in due time decree of publication of notice was entered. Subsequently said executors filed their third annual account, which was duly heard and approved, and the court—to wit, on November 11, 1896— made its decree charging said executors with a balance of cash on hand of $2,503.21 after paying all claims of every kind. On November 24, 1896, plaintiff, then a minor, by his

guardian, and Bessie Logan, his sister, legatees and devisees under the will, filed their petition for a partial distribution of said estate to themselves, and the court decreed that of said above-named sum the petitioners were entitled to one half, in equal shares, "and recited in its said decree that said testator had devised and bequeathed to Bessie Logan and Wayne McCloud absolutely one half of his said estate; and further recited that said bequest was subject to a certain trust, so-called, whereby said executors were directed to invest the proceeds from the sale of certain real estate mentioned in said will until said Wayne McCloud should attain his majority; and thereupon said court filed its said decree of partial distribution in accordance with said determination and the language of said will." Said executors acted jointly in handling the money of the estate, and kept a joint account in various banks, as such executors, up to the time of the final settlement of their said account and long thereafter, and up to the time of the death of said co-executor Baldwin. After said partial distribution was made and entered, the executors placed in the Bank of Hollister, pursuant to an agreement between plaintiff, the said executors, and said bank, the sum of $598.40, being the portion of plaintiff of said distributed money, after paying certain taxes falling due after the settlement of said final account. Plaintiff was at that time indebted to said bank in said amount of $598.40, which was at interest. Acting under the terms of the will, said executors deposited said money with said bank in their individual names, upon the agreement between plaintiff, themselves, and said bank, that no interest would thereafter be charged said plaintiff, said sum being so deposited to stop interest; and it was also agreed that upon plaintiff's coming of age a check should be given plaintiff on the bank, upon his order for said amount. Said sum is now held by said Bank of Hollister, and plaintiff is still indebted to said bank in said sum. Plaintiff reached his majority thereafter,—to wit, December 19, 1897,—and since said time he has demanded of said executor Hewlett to carry out said agreement on his part, which he has failed and refused to do. Prior to the commencement of the action said Bessie transferred to plaintiff all her interest in said money, and since said transfer plaintiff has frequently demanded from said Hewlett, and from defendants, his said

bondsmen, that they pay to him the sum so distributed,—
to wit, $1,191,—being said sum less certain taxes paid by said
executor Hewlett. It should be here stated that certain
defendants answered and claimed that under said decree of
distribution the executors held said funds as trustees of
plaintiff and said Bessie; also, that prior to said decree,—to
wit, January 24, 1894,—one Logan was duly appointed
guardian of plaintiff, and that on January 5, 1897, since said
distribution, said guardian receipted to said executors ' for
plaintiff's portion of said money; that all the moneys coming
from the estate of said Alonzo were received by executor
Baldwin, and that said executor Hewlett received' no money
which was not paid over to persons entitled thereto, except
two hundred dollars, which he is now ready and willing to pay
over to plaintiff. Other defendants set up in a separate
answer the same claim as to the distribution,—to wit, that the
money was distributed to the executors as trustees under the
will, and that the bondsmen thereupon became released from
any liability under their bond; and, by cross-complaint, they
allege, among other things, that the said Hewlett has on
deposit, as trustee, and not as executor, in the Bank of Hollis-
ter the money claimed by plaintiff, and that the said bank
claims some interest thereto, and it is prayed that said bank
be made to answer ·as cross-defendant, and to pay over to
plaintiff any money to which he may be found entitled. The
Bank of Hollister, being so ordered by the court, answered the
cross-complaint; denied that said money was distributed to
the executors as trustees to be invested by them as such trus-
tees; avers that the money was distributed to plaintiff and
said Bessie, and has since been held by the executors as such;
avers the agreement found by the court as to the loan by it to
plaintiff, and the deposit of his share of the said money as
found by the court, and avers its frequent demand on the
executors to carry out said agreement, and their neglect and
refusal so to do; prays that the court order said Hewlett and
the representative of Baldwin, deceased, to transfer the
amount due said plaintiff, on deposit in said bank, to be paid
to said bank.

In its conclusions of law the court found that plaintiff is
entitled to judgment against executor Hewlett and his bonds-
men for the sum of $1,191, with interest on $592.60 from

January 1, 1898; that the decree direct $598.40 to be paid over to Bank of Hollister for the use of plaintiff, and when so paid to be credited on said judgment. The decree was accordingly entered.

1. The appeal is from the judgment and from the order denying a motion for a new trial on bill of exceptions. At the hearing of the motion, defendant Bank of Hollister objected to its consideration, on the ground that the notice of intention had not been served on it or its attorney. In a separate bill of exceptions, the fact of this non-service was shown and the court so certified. The Bank of Hollister was interested in the judgment to the extent claimed by it, and had a right to be heard on the motion; as to this defendant, the judgment cannot be disturbed by the appeal from the order. (*United States* v. *Crooks,* 116 Cal. 43.) Neither can the appeal from the judgment affect this defendant, because, first, defendant Hewlett admits that the money was deposited with the bank under the alleged agreement, and the judgment disposes of the money in pursuance of that agreement. Two of the sureties who appeal specially except that part of the judgment in favor of the bank, and, therefore, they are not injured by affirming the judgment as to the bank; and as to the other sureties, they are benefited by the judgment in this particular, and, not being aggrieved, may not complain.

2. The principal question relates to the liability of the sureties of executor Hewlett. They contend that upon distribution the estate was closed as to the office of executor, and thereafter the property was held by the same persons as trustees; that the bond did not include the office of trustee separate from that of executor, and that the decree of distribution became conclusive that the will contained a trust. The bond was conditioned for the faithful performance of his trust by executor Hewlett, and did not make the bondsmen liable for any violation of an express trust, such as is claimed to have been created by the will.

In November, 1896, the executors filed what was termed "the third annual account, and in the nature of a final account of the administration of said estate." The account showed "balance cash on hand to be distributed, $2,503.21," one half of which is the sum in controversy, as belonging to plaintiff in his own right and as assignee of his sister, Mrs. Logan.

The account was allowed and settled December 11, 1896, and on December 18, 1896, the petition of plaintiff and Mrs. Logan for partial distribution of their share of the estate was heard and granted. The decree contained the following provisions: ''That in and by said last will and testament of said deceased, said testator devised and bequeathed to said Bessie Logan and said Wayne McCloud each an undivided one fourth of the property hereinafter described, . . . subject, however, to a certain trust in said last will mentioned, wherein said Samuel Hewlett and R. D. Baldwin are appointed as trustees for the said Bessie Logan and Wayne McCloud; and it appearing to the court that the said trustees aforesaid are entitled under the terms of the last will and testament of said deceased to the property hereinafter described in the portions aforesaid, it is therefore ordered, . . . that the residue of the said estate, . . . and now remaining in the hands of said executors, be and the same is hereby distributed as' follows,— to wit: To the said Samuel Hewlett and R. D. Baldwin, as trustees for said Wayne McCloud and Bessie Logan, the sum of $1,251.60 in case [then follows the distribution as to the other heirs]. The following is a particular description of said estate referred to in this decree and of which partial distribution is ordered . . . as aforesaid,—to wit: Personal property. Cash, $2,503.21. Real Property [description follows]. Done in open court, this second day of January, 1897.''

Deceased owned certain real estate which was under contract of sale, and in his will he provided as follows: ''Thirdly, I hereby bequeath and devise the said real estate and the proceeds thereof, subject to the conditions of said contract or agreement, to my grandchildren, the children of my daughter, Ann Jeannette Hewlett and Samuel Hewlett, and the children of my son, Edmund A. McCloud, by right of representation; that is to say, the children of said Hewletts shall take what their mother would have taken, and that the children of Edmund A. McCloud take what their father would have taken, had the said Ann Jeannette Hewlett and the said Edmund A. McCloud survived me. Fourthly, I hereby direct the said Samuel Hewlett [one of the executors] to invest the proceeds which may be derived from the sales of my separate property aforesaid to which his children by my daughter, Ann Jeannette Hewlett, may be

entitled, in some valuable interest-bearing securities, until his youngest child, Jeannette, shall attain her majority. Fifthly, I direct my executors hereinafter named to invest the proceeds which may be derived from the sales of my separate property aforesaid [the property in question] to which the children of Edmund A. McCloud may be entitled, in some valuable interest-bearing securities, until his youngest child, Wayne, shall attain his majority.'' He then devises one fourth of his community property to his wife, in addition to what she is entitled by the law of succession, and the residue he devises to his heirs, including his said grandchildren, according to the law of succession. ''Lastly, I hereby nominate and appoint Samuel Hewlett and Robert D. Baldwin the executors of this my last will and testament, requesting them to employ my friend Frank T. Baldwin as their attorney.''

The decree of distribution, by the terms of which appellants the bondsmen claim their discharge, recites that the property in question was devised to plaintiff and Mrs. Logan ''subject to a certain trust in said last will mentioned, wherein said Samuel Hewlett and R. D. Baldwin are appointed as trustees for the said Bessie Logan and Wayne McCloud,'' and ''it is ordered . . . that the same be distributed . . . to the said Samuel Hewlett and R. D. Baldwin, as trustees for said Wayne McCloud and Bessie Logan.'' No reference is made to the will as showing what powers are conferred on the trustees, as was the case in *Goldtree* v. *Thompson,* 79 Cal. 613, and no powers are specifically conferred by the decree; and the decree is not only indefinite, but is wholly wanting in stating the purpose of the trust, which is one of the essentials to a valid trust. (Civ. Code, secs. 2221, 2222.) If we look to the decree alone to determine the rights of the parties, as one must, ordinarily, (*Goad* v. *Montgomery,* 119 Cal. 552,[1]) we are without rudder or compass, and must necessarily turn to the will, and incidentally to the proceedings for distribution. By the terms of the will, the property was devised absolutely to the devisees named. The power given ''to invest the proceeds'' was in the form of a direction only, and was to the *executors.* No mention was made of a trust or trusteeship other than such as would arise out of the office of executor. The petition was for distribution direct to the heirs, and the executors were

[1] 63 Am. St. Rep. 145.

parties to it, and appeared in person. If the will had authorized the court to declare a trust in the persons named, apart from their office of executor, and the court had erroneously construed the instrument, the decree might have been conclusive, as there was no appeal from it. But we do not think the court had any power or jurisdiction to carve out a trust from anything to be found in the will, and, independent of the will, it had no power to create the trust. For the purposes of distribution the will must be consulted, and its terms may be construed in determining the intention of the testator; and it is true that the judgment is a final determination of the rights of the parties to the proceeding, and that the will cannot be used to impeach the judgment, although it may be referred to in aid of the judgment where necessary. (*Goad* v. *Montgomery,* 119 Cal. 552.[1]) Still, if the decree on its face fails to create a valid trust, and if by reference to the will no authority is found for its creation, the decree, in so far as it attempts to raise a trust, must be treated as a nullity. There is no claim here that the judgment is erroneous as to the surviving executor Hewlett, for the action was not commenced until after plaintiff came of age and was entitled, under any view of the matter, to the money involved.

We think the effect of the decree at most was to charge the executors with a duty as executors to invest the proceeds as directed by the will, and that the bondsmen of Hewlett were not discharged from liability by the decree. Whether the power resides in the court to prolong the settlement of an estate, under such a will as the one before us, we do not decide; the devisee seems to have acquiesced until he came of age, and the question does not arise. The evidence was that the money deposited in the Bank of Hollister was placed there by Hewlett and Baldwin, as executors, several months after the decree was entered; that Hewlett never, in fact, invested any money for either plaintiff or Mrs. Logan. Hewlett testified: "At the time we sent the money to the Bank of Hollister I supposed that it was Wayne's portion. I did not act as trustee for Mrs. Logan or her assigns. I positively refused so to act." Having deposited the money of plaintiff as executor, and having refused to act as trustee for Mrs. Logan, he must have held her money as executor. Appellants cite section 1702 of the Code

[1] 63 Am. St. Rep. 145.

of Civil Procedure to show that the alleged trusteeship was
not declined. But that section refers to "any person named
or designated as a trustee in any will," and here there was no
trustee so named. It is worthy of remark that the third
account of the executors was allowed as prayed for, but there
is nothing to show that they were ever discharged from their
trust as executors, or that they ever asked to be discharged,
while there is evidence showing that they acted as executors
after their account was settled and after the decree of partial
distribution was entered. We think there is evidence to
support sufficient of the findings to support the judgment.

It is advised that the judgment and order be affirmed.

Gray, C., and Haynes, C., concurred.

For the reasons given in the foregoing opinion the judgment
and order are affirmed.

Harrison, J., Garoutte, J., Van Dyke, J.

Hearing in Bank denied.